FILED
2013 May-31  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **TRINAE D WATKINS,** )<br>)<br>Plaintiff, )<br>)<br>**v.** )<br>)<br>**REGIONS MORTGAGE INC., et**<br>**al.,** )<br>)<br>)<br>Defendants. ) | Civil Action Number<br>**5:12-cv-03902-AKK** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Trinae D. Watkins brings this action against Regions Mortgage Inc.

("Regions"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and

Sirote & Permutt PC ("Sirote") for alleged violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Truth in Lending Act

("TILA"), 15 U.S.C. § 1641(g), and for state law wrongful foreclosure.  Doc. 44.

The court previously dismissed Watkins' FDCPA claims against Sirote and

Regions, resulting in the dismissal of Sirote from this action.  *See* doc. 28.  Regions

and Freddie Mac now move for summary judgment on all remaining claims, docs.

84-86, and Watkins likewise seeks summary judgment on her claims, doc. 87.  The

motions are fully briefed and ripe for review.  Docs. 90-93, 95, 97.  For the reasons

1

stated more fully below, Regions and Freddie Mac's motion is **GRANTED** and

Watkins motion is **DENIED**.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary

judgment is proper "if the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

moving party bears the initial burden of proving the absence of a genuine issue of

material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is

required to "go beyond the pleadings" to establish that there is a "genuine issue for

trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a

material fact is genuine "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

The court must construe the evidence and all reasonable inferences arising

from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.  <u>FACTUAL BACKGROUND</u> [1]

Regions originated a mortgage loan (the "Loan") in favor of Watkins on December 23, 1997.  Doc. 86-1 at 3.  As part of the Loan, Watkins executed a $91,000 promissory note (the "Note") payable to Regions.  *Id*. at 3, 9-10.  Using the money from the Loan, Watkins purchased a home in Huntsville, Alabama (the "Property").  *Id*. at 3.  To provide Regions with security for the Loan, Watkins executed a Mortgage in favor of Regions, also dated December 23, 1997, and Regions recorded the Mortgage in the Office of the Judge of Probate of Madison County, Alabama.  *Id*. at 4, 12-17.  In relevant part, the Note and Mortgage state

> In return for a loan that I have received, I promise to pay U.S. $ 91,000.00 ([the] "principal"), plus interest, to the order of the Lender. The Lender is Regions Mortgage, Inc.  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."
>
> . . .
>
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

---

[1] In considering a motion for summary judgment, the facts are viewed in a light most favorable to the non-moving party.  *Adickes*, 398 U.S. at 157.  Accordingly, the court will view the facts in a light most favorable to Watkins when analyzing Defendants' motion, and in a light most favorable to Defendants when analyzing Watkins' motion.  However, the facts are taken largely from Defendants' motion because Watkins failed to provide evidence to support her factual assertions and unsupported factual assertions are insufficient to defeat or establish entitlement to summary judgment.  *Pace*, 283 F.3d at 1276, 1278; *Ellis*, 432 F.3d at 1326.

Doc. 86-1 at 9 (excerpt from the Note).

> The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17.
>
> . . .
>
> The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.
>
> . . .
>
> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . . If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Doc. 86-1 at 15-16 (excerpt from the Mortgage).

In January 1998, Regions and Freddie Mac prepared a Transfer and Assignment of Watkins' Loan.  Doc. 86-1 at 19.  Regions subsequently sold Watkins' Note and Mortgage to Freddie Mac on February 12,1998.  *Id*. at 4.  As

part of the sale of the Loan to Freddie Mac, Regions followed Freddie Mac's

"Single-Family Seller/Servicer Guide" (the "Guide") and endorsed the Note in

blank.  Doc. 86-2 at 4, 8-9.  Regions also executed a Seller/Servicer Certification

and Custodian Certification, dated January 29, 1998, acknowledging that, despite

the sale, Regions would  retain custody of the original Loan documents and

continue to service the Loan.  Doc. 86-1 at 4-5, 21; Doc. 86-2 at 3-4, 11, 13-15, 17.

Based on Freddie Mac's Guide, Regions and Freddie Mac did not record the

Assignment.  Doc. 86-1 at 4; Doc. 86-2 at 4, 11, 13.

Prior to 2011, Watkins made payments on the Note to Regions.  However, in

July 2011, Watkins' payment was returned due to insufficient funds.  Doc. 86-1 at

5.  After Regions notified Watkins of the insufficient payment, Watkins failed to

make any further payments.  *Id*.; Doc. 87 at 6.   Instead, Watkins began searching

for refinancing options with other lenders.  Doc. 87 at 6.  Watkins asserts that First

Commonwealth Mortgage approved her for a loan and scheduled to close in

September 2011.  *Id*.  However, Watkins "became suspicious with regard to the

rightful owner of the loan" and was unable to close the refinance loan.  *Id*.

On September 15, 2011, Regions sent Watkins a letter stating that she had

breached her mortgage agreement by failing to make payments and that if she did

not cure this breach within thirty days, Regions would accelerate the remaining

balance and potentially foreclose on the Property.  Doc. 86-1 at 31.  Regions then

hired Sirote "to assist with the exercise of its rights and remedies under the Note

and Mortgage."  Doc. 85 at 10; Doc. 86-3 at 3.  Accordingly, on November 29,

2011, Sirote sent Watkins a "Notice of Acceleration of Promissory Note and

Mortgage" on behalf of Regions.  Doc. 86-3 at 8.  However, Watkins still failed to

submit a payment.  Doc. 87 at 6.

Under Freddie Mac's Guide, Regions remained the mortgagee of record with

the right to institute foreclosure proceedings on the Mortgage.  Doc. 86-2 at 19-20

("The Servicer must instruct the foreclosure counsel or trustee to process the

foreclosure in the Servicer's name.").  Accordingly, on behalf of Regions, Sirote

sent Watkins a "Notice of Foreclosure" stating that Regions would foreclose the

Mortgage on January 12, 2012.  Doc. 86-3 at 10.  Regions was ultimately unable to

foreclose because Watkins filed for bankruptcy in the Northern District of

Alabama.  *Id*. at 4.  The Bankruptcy Court dismissed Watkins' case in February

2012 and Sirote sent Watkins another Notice of Foreclosure on March 13, 2012

stating that Regions would foreclose the Mortgage on April 16, 2012.  Doc. 86-3 at

13.  In the interim, Watkins sent Regions a letter asking it to clarify its standing

with respect to the Loan and attached property.  Doc. 87-1 at 8-11.  Regions

responded by stating that it would research Watkins' request and respond fully at a

later date.  Doc. 87-1 at 13.

In late March, Watkins again filed for bankruptcy, preventing Regions'
foreclosure on the Mortgage.  Doc. 86-3 at 4-5.  The Bankruptcy Court discharged
Watkins on August 7, 2012.  Doc. 86-5 at 2-4.  After the discharge, Sirote again
sent Watkins a Notice of Foreclosure stating that Regions would conduct the
foreclosure sale on November 29, 2012.  Doc. 86-3 at 16-17.  Watkins responded
by asking Sirote to inform her of the foreclosing entity's name and contact
information.  Doc. 87-1 at 29.  Sirote's response letter stated, in part, that Watkins'
"loan originated with [Regions] and was sold to [Freddie Mac].  The loan is
currently being serviced by [Regions].  Therefore, no assignment of mortgage is
necessary."  Doc. 87-1 at 31. Watkins then filed this action on November 19, 2012.
Doc. 44.  In light of this lawsuit, Regions has not yet conducted a foreclosure sale.
Doc. 86-3 at 5.[2]

---

[2] Relying on the affidavit of Mr. Damion Emholtz, a purported expert, Watkins contends
that the mortgage documents are fraudulent and contain a "photo-shopped" signature.  *See* doc.
93.  Watkins also relies on an affidavit submitted my Mr. Joseph R. Esquivel, Jr.  *See id.*
However, Watkins failed to submit an expert report for Emholtz or Esquivel prior to the
expiration of the court's expert deadline, and the court previously struck Watkins' untimely
expert witness list and reports.  Doc. 63.  Accordingly, Watkins cannot now rely on these
purported expert opinions and the court **GRANTS** Defendants' motions to strike, docs. 90 and
96, and **STRIKES** the Emholtz and Esquivel affidavits.  Moreover, to the extent that Watkins is
claiming she never signed the mortgage note or papers, it defies logic that Watkins paid her
mortgage from December 1997 until July 2011 on a mortgage note she is now contending is
based on a fraudulent signature.  In any event, as shown below, the photo-shopping contention is
a quintessential red herring since it has no bearing on the specific claims Watkins raises in this
lawsuit.

# III. ANALYSIS

Both Watkins and Defendants contend that they are due summary judgment on all remaining claims and that the court should quiet title in their favor. The court discusses the parties' contentions with respect to each remaining claim below.

## A.   Federal Law Claims Against Freddie Mac

### 1.   The Fair Debt Collection Practices Act

In Count 2, Watkins alleges that Freddie Mac violated the FDCPA by "misrepresenting [itself] as the secured creditor of subject property when [it] made an attempt to foreclose[.]" Doc. 44 at ¶ 69. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means *in connection with the collection of any debt*." 15 U.S.C. § 1692e (emphasis added). However, the evidence establishes that Regions was identified as the foreclosing entity in each notice Sirote sent Watkins. Doc. 86-1 at 31; Doc. 86-3 at 3, 8, 10, 13, 16-17. There is no evidence before this court that establishes that Freddie Mac ever attempted to collect a debt from Watkins or foreclose on the Property. Put differently, Watkins failed to establish that Freddie Mac acted as a debt collector or

made a misrepresentation "in connection with the collection of a[] debt." 15 U.S.C.

§ 1692e.  Accordingly, Watkins' motion on the remaining FDCPA claim is

**DENIED** and Freddie Mac's motion is **GRANTED**.

### 2.      The Truth in Lending Act

The TILA requires a creditor "that is the new owner or assignee of [a] debt"

to "notify the borrower in writing of such transfer" within 30 days of the sale,

transfer, or assignment.  15 U.S.C. § 1641(g).  While Watkins contends that

Freddie Mac violated the TILA by failing to provide such notice, Freddie Mac

contends that the code section at issue is inapplicable in this instance.  *See* doc. 44;

doc. 85 at 14-17.  The court agrees.

Section 1641(g) became effective on May 20, 2009 and Congress failed to

include any language suggesting it intended § 1641(g) to apply retroactively.  *See*

Pub. L. No. 111-22, § 404, 123 Stat. 1632 (May 20, 2009).  In the absence of such

language, there is a clear presumption against retroactive application and a well

settled "principle that the legal effect of conduct should ordinarily be assessed

under the law that existed when the conduct took place[.]" *Landgraf v. USI Film*

*Products*, 511 U.S. 244, 265 (1994) (quoting *Kaiser Aluminum & Chemical Corp.*

*v. Bonjorno*, 494 U.S. 827 (1990) (Scalia, J., concurring)).  Based on this principle,

the court declines to find that § 1641(g) applies retroactively.  *See also Connell v.*

*CitiMortgage, Inc.*, No.11-0443-WS-C, 2012 WL 5511087, at \*12 n.3 (S.D. Ala. Nov. 13, 2012); *Foley v. Wells Fargo Bank, N.A.*, 2012 WL 4829124, at \*2 (S.D. Fla. Sept. 28, 2012). Since Regions assigned Watkins' Mortgage to Freddie Mac in 1998, prior to the enactment of § 1641(g), no obligation existed for Freddie Mac to provide notice of the conveyance to Watkins. Accordingly, Watkins' motion on this claim is **DENIED** and Freddie Mac's motion is **GRANTED**.[3]

## B.   State Law Claims Against Regions and Freddie Mac

### 1.   Quiet Title Action

In Count 3, Watkins seeks a declaration regarding the true owner of the Mortgage and Note. Doc. 44 at 17-20. Watkins contends that Regions cannot hold title because it split the Note from the Mortgage and, additionally, that Freddie Mac cannot hold title because the Assignment was unrecorded and the Note was endorsed in blank. *See id.*; *see also* docs. 87 and 93. The court disagrees. First, even if Regions "split the note and mortgage," this fact does not extinguish the existence of an enforceable lien under Alabama law. *Harton v. Little*, 57 So. 851, 270-71 (Ala. 1911); *Perry v. Federal Nat. Mortg. Ass'n*, 100 So. 3d 1090, 1097

---

[3] Freddie Mac asserts, alternatively, that Watkins' claim is barred by the TILA's one year statute of limitations. Doc. 85 at 14-17. Indeed, the TILA provides that claims under its provisions must be raised within one year of the violation. 15 U.S.C. § 1640(e). Accordingly, Watkins' limitations period expired in 1999, one year after Regions assigned the mortgage to Freddie Mac.

(Ala. Civ. App. 2012); *Coleman v. BAC Servicing*, 104 So. 3d 195, 205 (Ala. Civ. App. 2012).  Therefore, Watkins' contention that this splitting frees the Property as collateral for the Loan is unavailing.

Moreover, the Note is a negotiable instrument under Alabama law that can be endorsed in blank (referred to as "bearer paper") and enforced by "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 7-3-309 or 7-3-418(d)."  Ala. Code §§ 7-3-104, 7-3-301, 7-1-201(21) (1975).  Based on the evidence, Regions originated the Loan but subsequently assigned both the Mortgage and Note to Freddie Mac.  Doc. 86-1 at 3-4, 9, 15-16, 19.  As part of this assignment, Regions endorsed the Note in blank, but retained physical possession of all the Loan documents – including the Note and Mortgage – and agreed to act as the Loan Servicer for Freddie Mac.  *Id*. at 4-5, 21; Doc. 86-2 at 3-4, 8-9, 11, 13-15, 17. Since "[p]ossession of a note payable to order and indorsed in blank is prima facie evidence of ownership," Regions is properly considered the owner of the Note and holder of the power of sale by virtue of possession of the Note itself.  *Thomas v. Wells Fargo Bank, N.A.*, No. 2101153, 2012 WL 3764729, at *7 (Ala. Civ. App. 2012).  Additionally, although § 35-4-90 states that mortgage conveyances must be

recorded, it also states that a failure to do so renders the conveyance void only "as to purchasers for a valuable consideration, mortgagees[4] and judgment creditors without notice[.]" Ala. Code § 35-4-90(a).  In other words, "the failure to record [an] assignment of the note and mortgage is relevant only to subsequent purchasers of the property, and in this case there were none."  *Knowles v. HBSC Bank USA*, No. CV-11-J-1953-S, 2012 WL 2153436, at *4 (N.D. Ala. June 8, 2012), citing *Sixty St. Francis Street, Inc. v. Protective Life Ins. Co.*, 554 So. 2d 1003 (Ala. 1989).  Since the failure to record has no effect and the conveyance was executed in writing, Regions' assignment of Watkins' Mortgage and Note to Freddie Mac is valid.  *Id*. ("A mortgage, though not recorded, is valid and passes title as between the parties."); *see also Wittmeir v. Leonard*, 122 So. 330 (Ala. 1929); *Murphree v. Smith*, 277 So. 2d 327 (Ala. 1973).

In sum, based on the valid assignment, Freddie Mac is now the mortgagee with legal title to the Property and, as the Loan Servicer and holder of the Note, Regions retains the power of sale contained in the Note.  Accordingly, Watkins' motion on the quiet title action is **DENIED** and Defendants' motion is

---

[4] The mortgagee is "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." Black's Law Dictionary (9th ed.2009), mortgagee; see also Ala.Code § 35-10-50 (defining mortgagee as "[t]he owner of the debt secured by a mortgage.").  Accordingly, Watkins is not a mortgagee and the recordation statute does not render the assignment void with respect to her.

**GRANTED**.

### 2.     Wrongful Foreclosure

Lastly, Watkins asserts a wrongful foreclosure claim against Regions and Freddie Mac based on the purported improper assignment of her mortgage.  Doc. 44 at 6-15.  Watkins' claim against Freddie Mac fails as a matter of law because it did not institute foreclosure proceedings against Watkins.  *See* section III(A)(1), *supra*.  Additionally, as discussed above, although Freddie Mac is the current mortgagee, Regions retained possession of the Note and Mortgage – including the power of sale – as Freddie Mac's designated loan servicer.  *See* docs. 86-1 and 86-2.  Watkins concedes that she failed to make mortgage payments, doc. 87 at 6, and she thus is in default under the terms of her mortgage agreement, doc. 86-1 at 9, 15-16.  Based on Watkins' continued default and the terms of the Note and Mortgage, Regions properly instituted foreclosure proceedings, rather than for an improper purpose.  *Id*. at 15-16 ("If the default is not cured . . . , Lender, at its option, . . . may invoke the power of sale and any other remedies permitted by applicable law.").  Accordingly, Watkins motion on this claim is **DENIED** and Defendants' motion is **GRANTED**.

### IV.  <u>CONCLUSION</u>

In sum, Watkins motion for summary judgment is **DENIED**, but Defendants'

motion is **GRANTED**.  Accordingly, the court quiets title to the Property in favor of Defendants and this lawsuit is **DISMISSED with prejudice**.

      **DONE** this 31st day of May, 2013.

_____
      **ABDUL K. KALLON**
    UNITED STATES DISTRICT JUDGE